STATE OF NEBRASKA, APPELLEE, v. CARIL ANN FUGATE, APPELLANT.

154 N. W. 2d 514

Filed December 1, 1967. No. 36618.

Merril R. Reller, John McArthur, and A. James McArthur, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This is a second appeal in a proceeding under the Post Conviction Act.

Upon consideration of the defendant's motion and the files and records in the case, the district court originally found that the defendant was not entitled to any relief. Upon appeal from that order we held that the defendant should have an opportunity to present any evidence that she might have, in addition to that then appearing in the record, relating to the voluntariness of her pretrial

326

statements. The cause was remanded to the district court for the purpose of an evidentiary hearing upon that issue. See State v. Fugate, 180 Neb. 701, 144 N. W. 2d 412.

An evidentiary hearing was held and the defendant was permitted to introduce additional evidence relating to her statements. The trial court again found that the defendant was not entitled to any relief and dismissed the proceedings. The defendant has appealed.

The defendant, who was then 14 years old, was a companion of Charles Starkweather during a series of killings in and around Lincoln, Nebraska. Two of the victims were her mother and stepfather. The defendant was convicted of first degree murder in the killing of Robert William Jensen.

The statements in question were made by the defendant before she was represented by counsel. The question to be determined is whether the statements may be held to be voluntary when the "totality of the circumstances" is considered. In determining this question we have considered all of the files and records in the case.

The defendant and Starkweather were apprehended in Wyoming on January 29, 1958. William S. Romer, a deputy sheriff, was driving between Casper and Douglas when he happened upon Starkweather wrestling with a motorist over possession of a gun. The defendant ran to Romer's automobile and began telling Romer about the killings. At the recent hearing the defendant testified: "When I ran to this man, I tried to tell him (Romer) what I had seen, and I was so frightened he (Starkweather) was going to kill me then." The defendant gave similar testimony during the trial. Upon direct examination she testified: "Q- How did you feel when they got you into the, when you got into Mr. Romer's car? A- I was trying to tell him everything that happened at once. I was trying to tell him about my family, about him killing the young ones, about him

killing the teenagers, and about him killing Mr. Meyer, and the people in the Ward house, and that he killed that man, I tried to tell him all of it at once, it just came out of me."

This testimony is significant because it characterizes the attitude of the defendant at that time and demonstrates the voluntary nature of her statements.

While the defendant was being held in the jail in Wyoming, she received a telegram from her sister, Barbara, which stated: "Tell everything you possibly can. Will help you when you return home. Our home is always open to you. We love you very much. Bob and Barbara Von Busch."

In regard to this telegram, the defendant testified upon direct examination: "Q- Do you remember that it said 'Tell everything that you possibly can?' A- Yes, sir, I do. Q- Have you done that ever since? A- Yes, sir I have."

Barbara Von Busch testified that her telegram to the defendant reflected the way that Barbara has felt at all times.

While the defendant was being held in the Wyoming jail she was told that first degree murder charges were pending against her and Starkweather at Lincoln, Nebraska, and that she was to be brought back for trial on that charge or another similar charge. She signed a waiver of extradition and arrived in Lincoln, Nebraska, on Friday evening, January 31, 1958.

During the trip back to Lincoln, the defendant volunteered information about the killings to Gertrude B. Karnopp. Mrs. Karnopp was the wife of the sheriff of Lancaster County, Nebraska, and the matron in charge of female prisoners. The evidence shows that the statements the defendant made at that time were volunteered.

On Saturday morning, February 1, 1958, the defendant was interviewed by Dale E. Fahrnbruch, a deputy county attorney. The defendant was being held at the State Hospital near Lincoln because the county jail had

no facilities for her detention. The interview was conducted in the presence of Mrs. Karnopp; Eugene Masters, the assistant chief of police; Dr. Vance Rogers, the president of Wesleyan University; and Dr. Edwin A. Coats, the acting assistant superintendent of the hospital. During the interview Mr. Fahrnbruch identified himself and told the defendant that she had been charged with first degree murder in the killing of Carol King but that she might be prosecuted for another killing; that she had a right to a lawyer but that Mr. Fahrnbruch had no way of providing her with a lawyer; that it was up to her to obtain a lawyer at that time, but that if she was bound over to the district court for trial and did not have sufficient funds, a lawyer could be appointed for her; that his purpose was to find out what the facts were; that anything she said could be used against her in court; and that she did not have to talk with him if she did not want to do so.

There was a second interview with the defendant on the following morning in the presence of Mrs. Karnopp and Dr. Coats. During the afternoon the defendant's father and sister Barbara were at the hospital and talked with the defendant.

That evening a question-and-answer statement was taken by Mr. Fahrnbruch in the presence of Audrey Wheeler, a court reporter; Mrs. Karnopp; and Dr. Coats. The statement was completed the following day, Monday, February 3, 1958. The defendant was taken before the county judge that afternoon and a preliminary hearing was set for March 8, 1958.

On February 5, 1958, the transcribed question-and-answer statement was read to the defendant in the presence of Mrs. Karnopp; Mr. Masters; Edmund E. Belsheim, the Dean of the Nebraska Law School; and William D. Blue, an attorney. The defendant conferred with Dean Belsheim and Mr. Blue before the statement was read to her, and they advised her not to sign the statement or make any written corrections and that whatever cor-

rections were made should be made orally. The statement was then read to the defendant and a number of corrections were made orally by her.

The question-and-answer statement is the principal statement of the defendant which was admitted against her. The record abounds with evidence that the defendant answered the questions freely and that there were no promises, threats, or other inducements made to her. There is an entire absence of evidence to show coercion unless the fact that the defendant was 14 years of age, had been charged with murder, and was unrepresented by counsel is sufficient to establish involuntariness as a matter of law.

The record in this case shows a painstaking effort on the part of the authorities to treat the defendant fairly and accord her every right that she was entitled to under the law as it existed and was understood at that time. There was no incommunicado, secret, or prolonged interrogation of the defendant. There is no credible evidence of any inducement of any nature being made to the defendant. The defendant herself has testified that she tried to "tell everything that you possibly can" as she was advised to do by her sister.

We believe that the "totality of the circumstances" in this case shows that the statements of the defendant were voluntarily made. The defendant has not been deprived of "that fundamental fairness essential to the very concept of justice." The defendant is not entitled to relief under the Post Conviction Act.

The judgment of the district court is affirmed.

AFFIRMED.